656 So.2d 124 (1995)
Jeanette Tyler HUBBARD
v.
David A. HUBBARD.
No. 92-CA-01031-SCT.
Supreme Court of Mississippi.
June 1, 1995.
*125 James D. Shannon, Hazlehurst, for appellant.
W. Brady Kellems, Brookhaven, for appellee.
EN BANC.
JAMES L. ROBERTS, Justice, for the Court:

FACTS
Jeanette Tyler Hubbard (hereinafter "Jett") and David A. Hubbard (hereinafter "David") met in May, 1985, when Jett was living in Atlanta, Georgia, and David was living in Douglasville, Georgia. David was in chiropractic school, and Jett was employed with an accounting firm. In May, 1987, David purchased a chiropractic business in Brookhaven, Mississippi, and a mobile home for his residence.
*126 David and Jett were married on December 31, 1987. At the time of their marriage, Jett was working for a temporary agency in Atlanta earning $30,000 annually. She also worked part-time for a ladies clothing store earning $10.00 per hour. Jett was financially secure. She had total cash assets of approximately $10,000 and owned two rental houses in Birmingham, Alabama. After Jett and David married, she continued her employment in Atlanta and commuted to Brookhaven on weekends until May, 1988, when she moved to Brookhaven.
On June 7, 1988, Jett opened a ladies clothing store in Brookhaven. In August and December of 1988, Jett sold her rental properties and netted approximately $100,000 for these sales. Part of those proceeds was put into her business and part was spent on living expenses for herself and David.
Jett's business suffered financial hardship making her unable to pay the sales tax for items she sold. The State Tax Commission assessed Jett as owing $48,345 in sales taxes for the years 1989, 1990, and 1991. Jett's business suffered a net loss of $13,449 in 1991. The balance sheet dated June of 1992 showed her business having a negative net worth of $90,593. Jett filed for Chapter 13 Bankruptcy in May, 1992.
The marriage of David and Jett suffered many problems. Jett testified that she was very disturbed by David's behavior in flirting with other women, and David admitted committing adultery with two women. Jett left the marital domicile in December of 1990. They sought marriage counseling for a period of time, but their efforts were unsuccessful.
Jett filed a complaint for divorce on the grounds of habitual cruel and inhuman treatment, adultery, or, in the alternative, irreconcilable differences on October 2, 1991. She filed an amended complaint on January 7, 1992. She also sought a judgment against David in the amount of $8,000 for unpaid loans she allegedly made to him. David filed his answer on May 1, 1992, admitting that Jett was entitled to a divorce on the ground of adultery. He also filed a counter-claim for debts in the amount of $7,314 which he claimed she owed him.
Trial was held on June 22, 23, and 24, 1992, before Chancellor Donald B. Patterson in the Lincoln County Chancery Court. The court took the matter under advisement and requested that the attorneys brief the law and the facts. The Findings of Fact and Conclusions of Law and the Judgment were filed on July 28, 1992. Jett was granted a divorce on the ground of adultery and awarded periodic alimony in the amount of $600 per month for 36 months and attorney's fees in the amount of $3,300; approximately one-half of her attorney's fees.
The Chancellor denied each party's request for repayment of "loans" made to each other because the evidence indicated that the amount was practically equal. Lump sum alimony was denied as failing to meet the Retzer factors. Retzer v. Retzer, 578 So.2d 580 (Miss. 1990). Alternatively, the Chancellor awarded periodic alimony based upon the Brabham factors, Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 153 (1955), and specifically took all possible needs into consideration.
On July 29, 1992, David filed a Motion to Alter the Judgment and For Relief from the Judgment under M.R.C.P. 59(e) and 60(b)(6). The motion was treated as a Rule 59(e) motion, and it was denied on August 3, 1992. Jett timely filed her Notice of Appeal on August 31, 1993. David timely filed a Notice of Cross-Appeal on September 14, 1992. Aggrieved by the judgment Jett appealed and David cross-appealed.
Jett raised the following issues on appeal:
I. DID THE LOWER COURT ERR IN OFFSETTING ALL LOANS MADE BY APPELLANT AND APPELLEE THEREBY REFUSING TO AWARD APPELLANT REPAYMENT OF THE BUSINESS-RELATED LOANS MADE TO APPELLEE?
II. DID THE LOWER COURT ERR IN GRANTING APPELLANT PERIODIC ALIMONY FOR A PERIOD OF 36 MONTHS?
III. DID THE LOWER COURT ERR IN REFUSING TO REQUIRE APPELLEE *127 TO PAY FOR OR CONTRIBUTE TO APPELLANT'S MEDICAL NEEDS?
David cross-appealed the following:
I. DID THE CHANCELLOR COMMIT ERROR IN HIS CALCULATIONS OF OFF-SETTING THE LOANS BETWEEN THE PARTIES, THEREBY REFUSING TO AWARD RELIEF TO THE CROSS-APPELLANT FOR DEBTS OWED BY CROSS-APPELLEE?
II. DID THE CHANCELLOR ERR IN AWARDING ALIMONY TO THE APPELLANT/CROSS-APPELLEE, OR IN THE ALTERNATIVE, WAS THE AMOUNT OF ALIMONY AWARDED EXCESSIVE?
III. DID THE TRIAL COURT ERR IN AWARDING ATTORNEY'S FEES?
After a thorough analysis of the record and the law, we affirm the lower court's decisions. However, we deem the issue of "rehabilitative periodic alimony" meritorious warranting an Opinion by this Court.

DISCUSSION OF ISSUES

I.

DID THE LOWER COURT ERR IN OFFSETTING ALL LOANS MADE BY APPELLANT AND APPELLEE THEREBY REFUSING TO AWARD APPELLANT REPAYMENT OF THE BUSINESS-RELATED LOANS MADE TO APPELLEE?

DID THE CHANCELLOR COMMIT ERROR IN HIS CALCULATIONS OF OFF-SETTING THE LOANS BETWEEN THE PARTIES, THEREBY REFUSING TO AWARD RELIEF TO THE CROSS-APPELLANT FOR DEBTS OWED BY CROSS-APPELLEE?
Much of the testimony at trial concerned money allegedly loaned by the parties to each other. Jett loaned David money and made purchases for him. She claimed these loans and purchases were business loans. David also alleged unpaid loans to Jett.
Finding that Jett's claim and David's counter-claim for debts were practically equal, the chancellor denied both parties' claims for judgment for debts against each other. As the chancellor was not manifestly in error in his findings of fact, his ruling on the debts will not be disturbed by this Court.
David made an additional argument that Jett's monetary claims were barred by the statute of limitations. Section 15-1-29 of the Mississippi Code Annotated (Supp. 1994) provides, in part:
[A]ctions on open account or account stated not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three (3) years next after such cause of action accrued, and not after... .
Jett claimed that some of her loans to David occurred in February and March of 1988. Jett made demand for repayment as early as April 27, 1988, as evidenced by a collection demand letter she sent to David. However, since Jett did not file her original complaint, which included her claim for these debts, until October 2, 1991, David asserted that the debts were barred by the statute of limitations.
The statute of limitations defense was raised in his Answer but was not raised at trial in the form of evidence. David also merely replied as appellee with regard to the affirmative defense and did not raise the issue in his cross-appeal. As the Chancellor's finding regarding the "loans" was a proper equitable disposition, it will not be disturbed and we do not address the statute of limitations issue today. We affirm this holding.

II.

DID THE LOWER COURT ERR IN GRANTING APPELLANT PERIODIC ALIMONY FOR A PERIOD OF 36 MONTHS?

DID THE LOWER COURT ERR IN REFUSING TO REQUIRE APPELLEE TO PAY FOR OR CONTRIBUTE TO APPELLANT'S MEDICAL NEEDS?

DID THE CHANCELLOR ERR IN AWARDING ALIMONY TO THE APPELLANT/CROSS-APPELLEE, OR IN THE ALTERNATIVE, WAS THE *128 AMOUNT OF ALIMONY AWARDED EXCESSIVE?
In making his alimony determination, the Chancellor listed the factors to be considered in awarding lump sum alimony, citing Retzer v. Retzer, 578 So.2d 580 (Miss. 1990). He found that Jett's evidence satisfied none of those factors and denied lump sum alimony. He then stated that regarding periodic alimony, he had given careful consideration to the factors set out in Brabham. In awarding Jett periodic alimony the chancellor explained:
I have carefully considered plaintiff's reasonable needs to maintain a decent standard of living, including her psychological and medical and insurance needs. I have also carefully considered defendant's right to lead as normal a life as reasonably possible with a decent standard of living... .
Taking all this into consideration, plaintiff is awarded alimony in the amount of $600 per month for a period of thirty-six (36) months.
This sum is sufficient, together with plaintiff's other income, to sustain her and give her a chance to recover her health and to save her business, and if the business fails, to help her until she can re-enter the work force.

Defendant's practice is established and he has acquired a steady clientele without a full time secretary. His testimony is that he can do without a secretary, but he'd rather not. Since the amount he has budgeted for a full-time secretary is $176.66 per month more than this short term alimony award, I can safely say that this award does not impinge upon defendant's leading a reasonably normal life with a decent standard of living.
(emphasis added)
Jett argued that the court erred in placing a time limitation on the periodic alimony award. The chancellor specifically stated that she was entitled to periodic alimony but not lump sum alimony. Jett requested this Court to reverse the thirty-six month time limitation placed on the periodic alimony award.
In Cleveland v. Cleveland, 600 So.2d 193 (Miss. 1992), the trial court awarded the wife $50,000 lump sum alimony and monthly periodic alimony in the amount of $600 for seven years or until further order of the court. This Court found that "[t]here was nothing about the circumstances of this case or the situation of the parties which required a fixed termination date of the alimony payments ... and the chancellor was manifestly in error in doing so." Id. at 197. We noted that periodic alimony is subject to modification. With no way to anticipate the needs of the wife or the husband's ability to pay seven years from the date of the decree, this Court held that it was error for the chancellor to set a fixed termination date for the periodic alimony award. Finding the periodic alimony award insufficient, we reversed and rendered the award of periodic alimony and set it at $1,000 per month until further order of the chancery court. Id. at 197.
In Armstrong v. Armstrong, 618 So.2d 1278 (Miss. 1993), the trial court had declined to award the wife periodic alimony but awarded her "rehabilitative" alimony in the amount of $175 per month for two years. This Court reversed the alimony award for the limited period of two years and rendered an award in the amount of $175 per month until her death, remarriage, or the modification or termination of the award pursuant to a proper order of the trial court. Id. at 1282. Armstrong, involved a twenty-one year marriage. The wife was given primary custodial responsibility for two minor children from the marriage. She had little formal education or job experience. Under those circumstances, this Court found that "equity requires more than a time-limited award." Id. at 1281.
David acknowledged that the chancellor cannot set an arbitrary date for termination of periodic alimony without giving a justified reason. However, the chancellor specifically stated:

Taking all this into consideration, plaintiff is awarded alimony in the amount of $600 per month for a period of thirty-six (36) months.

This sum is sufficient, together with plaintiff's other income, to sustain her and *129 give her a chance to recover her health and to save her business, and if the business fails, to help her until she can re-enter the work force.

(emphasis added)
David contended that the chancellor indicated that a limited rehabilitative award was proper in this case. We agree.
In Dufour v. Dufour, 631 So.2d 192 (Miss. 1994), this Court affirmed an alimony award in the amount of $600 per month in the form of "periodic transitional alimony" for 30 months. The award was found appropriate under the Brabham factors. The Court stated:
What the chancellor referred to in part as "periodic" alimony, was in actuality a lump sum form of payment  payable in fixed periodic installments. "When the judgment is worded so that we cannot tell whether the award is periodic or lump sum, we will consider that the award is for periodic." Armstrong v. Armstrong, 618 So.2d 1278, 1281 (Miss. 1993). However, this does not preclude this Court from determining that the award is in the form of lump sum alimony. This Court looks "to the substance of the provision and not the label." Armstrong, 618 So.2d at 1281, citing Maxcy v. Estate of Maxcy, 485 So.2d 1077, 1078 (Miss. 1986).
Dufour, 631 So.2d at 195.
Periodic alimony terminates upon the remarriage of the receiving spouse or the death of the paying spouse. Armstrong, 618 So.2d at 1281. In the event of a material change in circumstances, it may be modified or terminated upon an order of the court. Shearer v. Shearer, 540 So.2d 9, 12 (Miss. 1989); McNally v. McNally, 516 So.2d 499, 502-03 (Miss. 1987); East v. East, 493 So.2d 927, 931 (Miss. 1986); Colvin v. Colvin, 487 So.2d 840, 841 (Miss. 1986); Wray v. Wray, 394 So.2d 1341, 1344 (Miss. 1981). Lump sum alimony differs in that it is a final settlement, not subject to modification. Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990); Wray, 394 So.2d at 1344. Lump sum alimony vests in the receiving spouse upon final judgment; therefore, it becomes an obligation of the estate of the paying spouse in the event death occurs before payment. Armstrong, 618 So.2d at 1281; Holleman v. Holleman, 527 So.2d 90, 92 (Miss. 1988); East, 493 So.2d at 931; Maxcy v. Estate of Maxcy, 485 So.2d 1077, 1078 (Miss. 1986).
In Bowe we stated that in determining whether an alimony award is lump sum or periodic, "we look to the substance of what has been provided, and not the label. We inquire not what the court entering the judgment meant but what the judgment means... ." 557 So.2d at 795. We further stated:
Our law vests in the chancery courts of this state broad authority to provide for the material needs of spouses incident to divorce. Over the years our cases have recognized several general forms of aid including, but not limited to: (a) periodic alimony, sometimes called permanent or continuing alimony; (b) lump sum alimony or alimony in gross; (c) division of jointly accumulated property; and (d) award of equitable interest in property. There are no clear lines of demarcation between these, nor should there be, and our courts have long been authorized in their sound discretion to use one or several or all in combination.

Id. at 794 (citations omitted) (emphasis added).
In Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss. 1994), we affirmed a self-adjusting periodic alimony award. In that holding, we essentially recognized a form of periodic alimony without the traditional element of a fixed amount. Similarly, the alimony in the case sub judice is a form of periodic alimony without one of the traditional elements; that being an indefinite time frame for the payment obligation.
In the case sub judice, we find that an explanation is needed regarding the types of alimony available to a chancellor and the results of a particular award. As mentioned in Bowe and Hemsley, the chancellor has great discretion in awarding equitable terms to divorcing parties. Therefore, we hold that a chancellor may place a time limitation on periodic alimony which is called "rehabilitative periodic alimony" for rehabilitative purposes. We do not disturb the Chancellor's *130 ruling today or our holding in Cleveland, but rather uphold the award as "rehabilitative periodic alimony" instead of "periodic alimony." It is still the law in Mississippi that "periodic alimony" can not have a fixed termination date. Cleveland v. Cleveland, 600 So.2d at 196.
We hold today that rehabilitative periodic alimony, synonymous with "periodic transitional alimony" in Dufour, is a separate and equitable tool for chancellors to use in their discretion and provide an instructive explanation herein. "Rehabilitative periodic alimony" is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim. "Periodic alimony" is for an indefinite period vesting as it comes due and modifiable. "Rehabilitative periodic alimony" is modifiable as well, but is for a fixed period of time vesting as it accrues. We still adhere to our prior decisions that unless it is clear from the record what sort of award is given that we will construe any ambiguity as being periodic and not lump sum. Sharplin v. Sharplin, 465 So.2d 1072, 1073 (Miss. 1985).
We do not disturb our holding in which this Court has stated that "[a] fixed and certain sum of money which is due and payable over a definite period of time is clearly alimony in gross, or lump sum alimony, and not periodic alimony." Holleman v. Holleman, 527 So.2d 90, 92 (Miss. 1988), citing Wray v. Wray, 394 So.2d 1341, 1345 (Miss. 1981). Rather the case sub judice and future rehabilitative periodic alimony awards are distinguishable even though some characteristics are the same. While both rehabilitative periodic alimony and lump sum alimony which is not paid all at once can share the same characteristic of being a certain amount of money paid over a definite period of time, they are distinguishable in their modifiability, respective purposes, and by the intent for which the chancellor grants them. "Rehabilitative periodic alimony" is not intended as an equalizer between the parties but is for the purpose of allowing the less able party to start anew without being destitute in the interim. In comparison, lump sum alimony is intended as an equalizer between the parties to serve equity amongst them completely once and for all. As Bowe explains, the forms of awards are not mutually exclusive though they may have different and similar effects and purposes.
The Chancellor clearly indicated that the thirty-six month award was for the purpose of allowing Jett to have some financial assurance until she could get back on her feet and become self-supporting, i.e. rehabilitative in nature. Unlike Armstrong, where we reversed an award for "rehabilitative" periodic alimony for two years, the marriage involved here lasted four years instead of twenty-one years as in Armstrong. We find that equity justified the Armstrong reversal just as equity justifies our affirmance in the case sub judice regarding "rehabilitative periodic alimony." "In the final analysis, all awards should be considered together to determine that they are equitable and fair." Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss. 1994).
Jett argued that the court erred in failing to require David to provide her health insurance premiums and non-covered expenses. Jett acknowledged that the court stated in the opinion that it considered her psychological, medical and insurance needs. However, she argued that the award of $600 per month indicates that the court made no enhanced award to cover her medical care. Jett contended that the chancellor erred in failing to make a separate provision for health insurance and expenses. Alternatively, she maintained that if the $600 per month included medical care, this amount was too low and manifestly in error.
In making the alimony award, the chancellor stated:
I have carefully considered plaintiff's reasonable needs to maintain a decent standard of living, including her psychological and medical and insurance needs.

(emphasis added)
It is clear that the chancellor considered Jett's medical needs in making his award of alimony. Under the facts of this case, the award of $600 per month was not too low. The parties were married for only four and one-half years. Until 1991, Jett paid her own medical insurance and *131 expenses. This Court will not disturb a chancellor's decision on alimony unless it is manifestly in error or against the overwhelming weight of the evidence. McNally v. McNally, 516 So.2d 499, 501 (Miss. 1987), citing Harrell v. Harrell, 231 So.2d 793 (Miss. 1970). Therefore, we affirm the chancellor's decision on medical expenses, finding no manifest error.

III.

DID THE TRIAL COURT ERR IN AWARDING ATTORNEY'S FEES?
David cross-appealed alleging that the trial court erred in awarding Jett attorney's fees. The court awarded Jett $3,300 out of $7,784 in attorney's fees and ordered David to pay one-half within thirty days and the balance within sixty days of the judgment.
As a general proposition, the award of attorney's fees in divorce cases is left to the discretion of the chancery court. Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss. 1988), citing Holleman v. Holleman, 527 So.2d 90, 95 (Miss. 1988); Carpenter v. Carpenter, 519 So.2d 891, 895 (Miss. 1988); McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982)). Additionally, if the wife [or spouse] is financially capable of paying the attorney's fees, then there is no entitlement to such award. Carpenter, 519 So.2d at 895.
Jett's financial condition indicated that she was not "financially capable" of paying her attorney's fees. The balance sheet dated June of 1992 showed Jett's business having a negative net worth of $90,593. Jett filed for Chapter 13 Bankruptcy in May, 1992. Her total monthly income was $1,085. Her financial declaration showed that she owed $11,726 in personal debt, including unpaid medical and dental expenses.
Under the facts of this case, the Chancellor did not abuse his discretion in awarding Jett $3,300 in attorney's fees. Therefore, we affirm the award of attorney's fees to Jett.

CONCLUSION
Finding no basis warranting a reversal of the chancellor's decisions, the lower court is affirmed in toto.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE, P.J., SULLIVAN and BANKS, JJ., CONCUR.
McRAE, J., concurs in result only.
PITTMAN, J., dissents with separate written opinion joined by SMITH, J.
SMITH, J., concurs in part and dissents in part with separate written opinion joined by PRATHER, P.J., and PITTMAN, J.
PITTMAN, Justice, dissenting:
I join Justice Smith's concurring opinion in part and dissenting in part, but I am compelled to write further.
This Court on occasions finds it necessary to write new law in order to give a better interpretation of a statute or to correct prior mistakes or in some instances to make sure that equity is done. In the case now before the Court, there is no statute that demands that we write new law creating rehabilitative periodic alimony to correct prior mistakes and no equity that requires the actions taken by the majority. The case at hand does not require or demand that we write new law. This Court, for no reason other than a desire to create new law, affirms a chancellor's award of rehabilitative alimony limited to 36 months. The majority states that periodic alimony is often used by chancellors and that it now desires that this Court recognize rehabilitative periodic time limited alimony.
Suffice it to say that periodic alimony has always been and is now subject to a time limitation. Instead of recognizing or honoring or making some date on a calendar controlling as to the payment of alimony, we long have held that periodic alimony may be terminated at any time by a chancery court based on a change of material circumstances. It is contrary to everything this Court has said in the past for us to now establish law that allows a chancellor to terminate alimony now for a future date when the chancellor has no way of knowing what the circumstances or facts or occurrences will be on the date in the future that alimony is terminated.
I simply do not believe that the majority's new-found authority to grant time limited *132 periodic alimony for rehabilitative purposes improves the law as announced by this Court in literally hundreds of prior cases. See Creekmore v. Creekmore, 651 So.2d 513 (Miss. 1995), Dufour v. Dufour, 631 So.2d 192 (Miss. 1994), and Armstrong v. Armstrong, 618 So.2d 1278 (Miss. 1993). That law being, that once periodic alimony is granted it may be changed by remarriage, death, or by modification of the court after a review of a petition for modification and proof supporting and opposing said petition. We have the best of all worlds now insofar as an award of alimony is concerned and to adopt a time limited periodic alimony does not improve the existing law and is unnecessary in the instant case and in fact denies equity to Mrs. Hubbard.
In Armstrong v. Armstrong, 618 So.2d 1278, 1281 (Miss. 1993), this writer wrote and this Court adopted the following:
Periodic alimony terminates automatically upon the death of the obligor or the death or remarriage of the obligee. Holleman v. Holleman, 527 So.2d 90, 92 (Miss. 1988); Skinner v. Skinner, 509 So.2d 867, 869 (Miss. 1987). Periodic alimony may be modified by increasing, decreasing, or terminating the award, in the event of a material change of circumstances subsequent to the decree awarding alimony, although self-help is pretermitted; that is, a change or modification may be made only upon order of the court. Shearer v. Shearer, 540 So.2d 9, 12 (Miss. 1989); McNally v. McNally, 516 So.2d 499, 502-03 (Miss. 1987); East v. East, 493 So.2d 927, 931 (Miss. 1986); Colvin v. Colvin, 487 So.2d 840, 841 (Miss. 1986); Wray v. Wray, 394 So.2d 1341, 1344 (Miss. 1981).
As stated in Justice Smith's concurring in part and dissenting in part opinion, Mrs. Hubbard came to this rather brief marriage with a substantial net worth of $150,000.00 or more and she leaves with a negative worth of $90,500.00 and the proof clearly shows that a portion of her net worth was used to support the marital home and to assist David Hubbard in the establishment of a chiropractic practice in Brookhaven. Further, she leaves with no hope of regaining her prior net worth and with relatively short rehabilitative periodic alimony here created for the first time. Insofar as this writer can tell from the reading of the majority opinion, while periodic alimony may be reviewed at any time by the chancellor, there is no opportunity for review on the thirty-six month time limitation of alimony in this case. Rather the judge has already predetermined that the alimony will be terminated. Equity does not require rehabilitative alimony in this case, previous law does not allow it, and rehabilitative terminable alimony is approved in this case only by creating new law in a case where the remedy does not fit the facts and the remedy does not fit the law as it exists.
SMITH, J., joins this opinion.
SMITH, Justice, concurring in part and dissenting in part:
I agree with the majority's affirmance of the chancellor's award of $3,300 attorney's fees to Jeanette Tyler Hubbard (Jett). It is with the majority's judicially constructed "periodic rehabilitative alimony" for a period fixed at 36 months that I disagree and therefore respectfully dissent.
The majority holds: "[A] chancellor may place a time limitation on periodic alimony which is called `rehabilitative periodic alimony' for rehabilitative purposes. We do not disturb the chancellor's ruling today or our holding in Cleveland, supra, but rather uphold the award as `rehabilitative periodic alimony' instead of `periodic alimony'. It is still the law in Mississippi that `periodic alimony' can not have a fixed termination date." Cleveland v. Cleveland, 600 So.2d at 196 (Miss. 1992). Majority Opinion, at 130.
Next, the majority holds "rehabilitative periodic alimony synonymous with `periodic transitional alimony' in Dufour, supra... ." Majority Opinion, at 130.
This dissenter recognizes that chancellors have been utilizing "rehabilitative alimony" but, this Court, prior to the case sub judice, has always held that such award was lump sum alimony, payable in fixed periodic installments. The majority has judicially created "Rehabilitative periodic alimony" for a *133 fixed period of time, vesting as it accrues and modifiable as well. Majority Opinion at 130.
The majority is correct in reciting that our decision in Cleveland was that "periodic alimony" cannot have a fixed termination date. However, this writer cannot find that Hemsley and Dufour supports their opinion, as the majority maintains. In Hemsley, this Court did not place a specific fixed termination time on the periodic alimony. In Dufour, although this Court did affirm the chancellor's "periodic transitional alimony", for 30 months or 2 1/2 years, this Court clearly held that the "periodic transitional alimony" granted by the chancellor was "in actuality a lump sum form of payment  payable in fixed periodic installments." However, time limited alimony awards made by trial courts have generally been held to be a form of lump sum alimony. See Armstrong v. Armstrong, 618 So.2d 1278, 1281 (Miss. 1993).
In the case sub judice, the record leaves no doubt that the chancellor rejected outright the consideration of a lump sum alimony award to Jett, citing Retzer and finding that Jett's evidence failed to satisfy any of the factors set out by the Court in that case. There simply is no misconstruing what the chancellor meant from this record. The chancellor thoroughly considered the Brabham factors and correctly found Jett was entitled to periodic alimony.
The chancellor stated that he considered Jett's psychological, medical and insurance needs. A review of the record reveals Jett's needs in these areas are vast indeed. Unequivocally, David's unfaithfulness and other gross conduct caused the breakup of this marriage. More importantly, that same conduct, particularly the history of Jett being sodomized by David, created the extensive need for psychological assistance concerning Jett's mental health. Dr. Charlton Stanley and Dr. John Long testified extensively concerning the long period of intensive therapy, traditional psychotherapy, group counseling sessions and various anti-depressant and anti-anxiety drugs that Jett would need in treatment of her mental health problems. Dr. Long testified Jett had already been tested several times for venereal diseases and would require testing for AIDS for the next five years, all of which was a direct result of David's extra marital affairs.
Jett came into this marriage earning $30,000 annually, owning two rental houses in Birmingham, $10,000 cash assets, a car, $20,000 worth of jewelry and financially secure. Jett received $100,000 from the sale of her rental houses. Part of the funds was used in establishing her ladies clothing business and the remainder was used by she and David for living expenses while he was establishing his chiropractic business.
Equally straightforward was Jett's financial condition at the end of the marriage. In December of 1991, she was assessed as owing $48,345.88 by the State Tax Commission for sales taxes due and owing to the State for inventory items sold in her failed business, Jett's Ladies Apparel. The June 1992 balance sheet on that business showed a net worth of - $90,593.95, with accrued indebtedness including unpaid medical and dental expenses of $11,726.00. Jett filed Chapter 13 bankruptcy in May of 1992.
The majority is strangely silent as to David's assets and financial condition. At the time of their marriage on December 31, 1987, David was struggling to start his chiropractic business in Brookhaven. David's net profit and loss for the year 1987 was $994.83. His income steadily increased during the following four years of their marriage. In 1991, David's net profit was $47,951.71.
If the chancellor considered all of these factors, as claimed, then the granting of true periodic alimony at $600.00 per month without any fixed time limitation placed thereon might be appropriate under the facts of this case. However, considering the financial conditions of both David and Jett prior to the marriage as compared to its ending in 1991, and Jett's health problems, the chancellor's award of $600.00 for only 36 months seems much too low or insufficient in time, thus suspect.
If the chancellor's 36 month time limitation is allowed to stand as a new, judicially created category of "rehabilitative periodic alimony", Jett Hubbard will absolutely have received unfair consideration of her financial needs considering her vast health concerns. *134 This begs the question: "Where's the equity?" The very nature of periodic alimony is that it is both permanent and continues thereafter until modification by the chancellor, death of the spouse paying the alimony, or remarriage of the receiving spouse. Considering her vast mental health needs, clearly caused by David, Jett should be entitled to true periodic alimony with no time constraints. As in Armstrong, "Under the facts of this case, equity requires more than the time-limited award." Id. at 1281. The periodic alimony award could be reviewed at a future date and modified if required. At the very least the case should be remanded for reconsideration of the amount of alimony awarded Jett.
This Court should not judicially create this new category of "rehabilitative periodic alimony for a specific period of time" in direct contradiction to our holding in Cleveland.
I respectfully dissent.
PRATHER, P.J., and PITTMAN, J., join this opinion.