McRAE, Justice,
dissenting:
¶ 24. This case is troubling. Claudia Car-nathan never proved nor asked for rehabilitative alimony. Yet, she received $2,000.00 per month for 24 months after she already wasted valuable job search time awaiting a disposition of this case by the chancellor! How could any chancellor justify granting 24 months of rehabilitative alimony to someone who is only going to seek a secretarial position for which she already possesses the sufficient training? Such a decision makes a mockery of what is rehabilitative alimony. *1254 Nonetheless, the chancellor granted rehabilitative alimony, though the parties never requested it in their divorce consent agreement for issues to be tried by the chancellor and the appellee did not meet her burden of providing credible evidence. The majority affirms the chancellor by “reasonable inference” of the appellee’s entitlement to such funds. Hence, the majority is of the belief that the chancellor did not manifestly err in providing rehabilitative alimony. For these reasons, I disagree.
¶ 25. The purpose of rehabilitative alimony is to allow “the less able party to start anew without being destitute in the interim.” See Hubbard v. Hubbard, 656 So.2d 124, 130 (Miss.1995). In considering this purpose for the grant of rehabilitative alimony, the query must be whether rehabilitative alimony is warranted. We may overrule a chancellor’s decision only if we find the evidence lacked credibility or that the chancellor manifestly erred. See Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994). Indeed, we are to accept supportive evidence and reasonable inferences drawn therefrom favoring the finding below. See Anderson v. Anderson, 692 So.2d 65, 72 (Miss.1997). To determine whether the rehabilitative alimony is reasonable, we are required to utilize the factors elicited in Hemsley v. Hemsley, 639 So.2d 909, 912-13 (Miss.1994), which the majority so dutifully recites.
¶ 26. A threshold matter of concern is the majority’s failure to consider that divorce is a creature of statute. See Massingill v. Massingill, 594 So.2d 1173, 1175 (Miss.1992). Under the mandates of Miss.Code Ann. § 93-5-2(3), parties consenting to an irreconcilable differences divorce permit the chancellor to decide the issues upon which they cannot agree. See § 93-5-2(3) (1994). The consent must be a signed writing and “must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent, and that the parties understand that the decision of the court shall be a binding and lawful judgment.” See id. We have previously stated we strictly follow divorce statutes. See Massingill, 594 So.2d at 1178.
¶ 27. In this case, the parties signed a typed consent agreement which the chancellor deemed to lack statutorily sufficient particularity. The chancellor subsequently allowed the parties to draft a particularized list of items at issue. The list was handwritten on a legal pad ten minutes before trial. While both parties signed the list, it lacked the requisite “voluntary consent” clause. Thus, the handwritten document too is insufficient. While one might argue that the handwritten document was incorporated in the originally submitted consent agreement, such an argument is without merit because justice requires an incorporated document to exist at the time of incorporation. Otherwise, one could change a document ad infini-tum to the prejudice of the courts and the parties. Hence, the divorce, including all granted rehabilitative alimony, is facially invalid.
¶28. Given what the Court fails to sufficiently consider, the rehabilitative alimony granted is unreasonable under Hemsley. Both parties have health problems — so much so, that it is difficult to determine who is the “less able party” under Hubbard. Further, Claudia received her just portion of the marital property, including an automobile and equity in the domicile. Claudia argues that the alimony is reasonable as she has no income and still must pay expenses in excess of $2,000 per month. Yet, the evidence weighs heavily to providing no alimony as she admitted she could have worked throughout the duration of the litigation despite her injury. Instead, she chose to live a sedentary life until the chancellor disposed of the marital domicile. She was concerned about taking a job, then needing to switch after the chancery court’s disposition of the house. Yet, such a decision is mutually exclusive from the key question of whether she could get a job or not without the need of rehabilitative funds for training. She argues all of this despite the fact that she was a secretary who switched jobs while she was married and still earned what the record states was a good salary. If she could immediately obtain a position that offers self-sufficiency, no rehabilitative alimony would be necessary. *1255 Therefore, sufficient evidence for reversal exists.[3]
¶29. The majority says it is making a reasonable inference. The majority is actually creating an incentive for Claudia to remain idle for 24 months. Indeed, the majority’s “inference” seems more like unreasoned conclusive thought. More aptly, reversal is warranted. Accordingly, I dissent.

. The majority footnotes an attempted response to the dissent, but it palefully fails to address that she did not prove a need for rehabilitative alimony — or come anywhere close — .