McMILLIN, C.J.,
for the Court:
¶ 1. Brenda Bumpous was granted a divorce from Donald Bumpous by judgment of the Chancery Court of DeSoto County on the ground of habitual cruel and inhuman treatment. As a part of the dissolution of the marriage, the chancellor made several rulings regarding the division of marital assets and post-divorce support for Mrs. Bumpous. Mr. Bumpous, finding himself dissatisfied with certain aspects of the chancellor’s rulings, has appealed to this Court claiming that the chancellor abused his discretion.
¶ 2. Specifically, Mr. Bumpous alleges that the chancellor was manifestly in error in awarding a restaurant business founded by his family (and located on what had formerly been real property owned by his family) to Mrs. Bumpous. Alternatively, he claims that, if the award of the business to his former wife is affirmed, the chancellor was overly generous in also awarding Mrs. Bumpous forty-four months of rehabilitative alimony. Finally, Mr. Bumpous alleges that, in view of the financial resources available to each of the parties, the requirement that he pay Mrs. Bumpous’s health insurance premium for twenty-four months was an abuse of discretion.
¶ S. Finding no reversible error in the chancellor’s ruling, we affirm.
I.
Facts
¶ 4. Mr. and Mrs. Bumpous were married for twenty-four years prior to their separation and divorce. Mr. Bumpous was employed as a truck driver and the evidence showed that he had an annual income of approximately $48,650. Some years prior to the divorce, the parties had purchased a restaurant business from Mr. Bumpous’s parents, and at the time of the divorce, Mrs. Bumpous was acting as manager of that operation. Evidence regarding actual income from the restaurant business was, taken in its best light, somewhat vague since Mrs. Bumpous conceded that she kept no financial records regarding take-out sales, which constituted a fair amount of the restaurant’s business activity.
¶ 5. Nevertheless, after considering all available evidence, the chancellor determined that Mrs. Bumpous should receive the restaurant business as a part of the equitable distribution of the party’s assets. Additionally, the chancellor noted that the business was encumbered by a purchase money promissory note owed to Mr. Bum-pous’s parents which was being paid at the rate of $1,000 per month and which would pay out in forty-four months at that rate. After ordering that Mrs. Bumpous, as the sole owner of the restaurant business, become responsible for retiring that indebtedness, the chancellor ordered Mr. Bum-pous to pay Mrs. Bumpous the sum of $500 per month as rehabilitative alimony for the corresponding period of forty-four months.
¶ 6. Mr. Bumpous was also ordered to pay the costs of maintaining Mrs. Bum-pous on his health insurance for the period permitted under federal COBRA laws. The evidence showed that, during the twenty-four months allowed under COBRA, Mr. Bumpous would be required to pay the additional sum, over rehabilitative alimony, of $290 per month.
*560 II.
The First Issue: Title to the Restaurant
¶ 7. Mr. Bumpous proved that the restaurant business had been founded by his mother and had been established on real property owned by his parents located near their residence. He contends that, because of (a) sentimental connections between the business and his family and (b) the close physical proximity of the business to his family’s real property, the chancellor erred in awarding all the business to Mrs. Bumpous.
¶ 8. Mr. Bumpous is correct when he argues that the chancellor must consider, among other things, “the emotional value” of any asset being distributed in an equitable distribution at the dissolution of a marriage. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). However, that is one of only a number of factors properly to be reviewed by the chancellor. Id. In this instance, the proof showed that Mr. Bumpous’s parents had tried unsuccessfully to sell the business on the open market before Mr. and Mrs. Bumpous bought it. This fact runs counter to any allegation that there was a significant sentimental attachment to the business, either as to Mr. Bumpous or as to his parents. Mr. Bumpous presented no compelling evidence suggesting that he had become more emotionally attached to the business in the time after he and his wife purchased the operation.
¶ 9. Conceding that Mr. Bumpous might have some understandable sentimental attachment to a business founded by his parents, the chancellor nevertheless was faced with making an equitable division of assets that would, insofar as possible, permit both parties to be financially independent of the other. Id. Mr. Bumpous was gainfully, and apparently securely, employed as a truck driver earning substantial wages. On the other hand, Mrs. Bum-pous had no readily-available means of earning a livelihood except in the restaurant business, where she had some experience and enjoyed a reasonable likelihood of future success.
¶ 10. On these facts, we are satisfied that the need to provide some reasonably secure means of income to Mrs. Bum-pous.—a need that seemed to be met by awarding her the restaurant business— was strong enough to override any possible emotional attachment that Mr. Bum-pous might have for the enterprise. We, therefore, cannot discover in the chancellor’s ruling the kind of abuse of discretion that would require this Court to intervene.
III.
The Second Issue: Rehabilitative Alimony
¶ 11. The chancellor ordered Mr. Bumpous to pay $500 per month for forty-four months in rehabilitative alimony. As an alternate argument, Mr. Bumpous urges that, if Mrs. Bumpous is allowed to retain the restaurant, she will have sufficient income to be self-supporting from the outset and that this fact renders inappropriate the chancellor’s decision to also award her rehabilitative alimony.
¶ 12. Rehabilitative alimony was formally recognized in this State in the case of Hubbard v. Hubbard, 656 So.2d 124, 130 (Miss.1995). Its purpose, as laid out in Hubbard, is to provide some measure of support on an interim basis to a divorcing spouse “needing assistance to become self-supporting without becoming destitute in the interim.” Id. In Hubbard, the stated purpose of the alimony was to give Mrs. Hubbard a period of opportunity to try to salvage a dress business she had started or, in the event that failed, time to re-enter the workforce in some other capacity. Id. at 128.
¶ 13. As we have observed earlier, the proof of Mrs. Bumpous’s income from the restaurant business was not entirely satisfactory. Mr. Bumpous argues that the proof showed that the parties would enjoy essentially equal income post-divorce'without an award of rehabilitative alimony. *561 The chancellor, in his reasoning to support the award, however, noted that the business was subject to an indebtedness of some $44,000 owed to Mr. Bumpous’s parents and he ordered Mrs. Bumpous to assume sole responsibility for that debt. Indicating that the debt could be retired at the rate of $1,000 per month, the chancellor tied the rehabilitative alimony award to that schedule. In effect, he compelled Mr. Bumpous to assist Mrs. Bumpous in obtaining the business free of any debt that might become burdensome during the inevitable adjustment period that follows a divorce.
¶ 14. Because of the relatively short-term but nevertheless substantial burden placed on Mrs. Bumpous to retire the entire debt for the purchase of the restaurant, Mrs. Bumpous’s financial future, absent some additional assistance from Mr. Bumpous, was simply not as certain as his. It is the view of this Court that an award of rehabilitative alimony pegged to end at a time when, if all goes according to projections, Mrs. Bumpous would own the restaurant debt-free and thereby enjoy a degree of financial security reasonably commensurate with that of Mr. Bumpous is an appropriate use of rehabilitative alimony.
¶ 15. We also conclude that, when viewed in the totality of the evidence of the parties’ competing financial needs and earning abilities for the short-term future, the amount of $500 is not so unduly burdensome on Mr. Bumpous as to be inequitable. He will continue to enjoy a level of disposable income sufficient to meet his living expenses. That these payments will pose a burden on Mr. Bumpous is beyond doubt. However, there is unavoidable uncertainty in Mrs. Bumpous’s short-term financial future in operating a closely-held business which is subject substantial indebtedness and which does not have a lengthy track record under her guidance. Any oppression to Mr. Bumpous arising out of this temporary diversion of his earnings is, in our view, offset by the benefits gained by the prospect that, in the long run, both parties under the scheme have reasonable prospects for a secure financial future independent of any long-term reliance on the other.
IV.
The Third Issue: Health Insurance
¶ 16. Mr. Bumpous makes no separate argument that the chancellor’s order that he pay $290 per month for twenty-four months for Mrs. Bumpous’s health insurance under COBRA is an abuse of discretion. Rather, he simply combines that figure with the $500 monthly rehabilitative alimony figure and says that, when his anticipated monthly income of approximately $4,000 per month is considered, the payments are unreasonably excessive. Taking into account the relatively short term of these payments, we remain convinced that the aim of providing some additional measure of financial security to Mrs. Bumpous in the short term beyond her own earning ability is a sufficiently equitable objective that it outweighs any short-lived financial discomfort the payment might cause Mr. Bumpous. The chancellor, in matters such as this, enjoys a necessarily wide measure of discretion. Martin v. Martin, 751 So.2d 1132 (¶ 12) (Miss.Ct.App.1999) (citing to Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993)). This Court may interfere only if we are persuaded that the chancellor has exceeded the boundaries of reasonable discretion. We do not so find in this case, and, therefore, we affirm the chancellor’s decision.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.