874 So.2d 469 (2004)
Lee MILLER, Appellant
v.
Debra MILLER, Appellee.
No. 2002-CA-01542-COA.
Court of Appeals of Mississippi.
May 25, 2004.
*470 John R. Reeves, attorney for appellant.
Sharon Patterson Thibodeaux, attorney for appellee.
EN BANC.
SOUTHWICK, P.J., for the Court.
¶ 1. The parties to this appeal were divorced by a judgment of the Hinds County Chancery Court. On appeal, the husband argues that lump sum alimony was improperly awarded. We agree. Yet we also find that some of the considerations that led to this award might instead justify periodic alimony. We reverse and remand for further proceedings.
¶ 2. Lee and Debra Miller were married in 1979. In 2000, Mrs. Miller filed for a divorce based on uncondoned adultery. A trial was held in 2001. The transcript reveals several omissions in the evidence. There were comments at the beginning of the evidentiary hearing that the attorneys had believed that they were going to settle the suit without the need for presenting evidence. Once the attorneys scrambled to try the case, there was a missing financial statement from the husband, and no appraisal and pay-off amount on loans on the marital home. A recess was taken during the hearing so that the husband could quickly prepare a financial statement.
¶ 3. There was testimony that a financial institution would within a few days provide a 1999 appraisal on the home and the payoff of the loans. Though the final judgment in this case was not entered until four months after the evidentiary hearing, there is no indication that the latter documents were ever received by the chancellor and considered.
¶ 4. The chancellor granted the divorce based on uncondoned adultery. The couple's only child was an adult and no provision *471 for him was needed. There was division of property, including some unimproved land that was ordered sold and the proceeds divided. Of particular concern on this appeal, Mr. Miller was ordered to pay as lump sum alimony the second mortgage payments on the home. Both spouses indicated that there was about $55,000 in debt secured by two mortgages on the home. Mrs. Miller's financial statement alleged that monthly payments on the two notes were about $888. The husband asserted that the house was worth about $100,000, while the wife alleged that it was worth $79,000. She also alleged that an appraisal made of the house's value two years earlier had stated a value of about $82,000. This is the appraisal that was supposed to be received within a few days of the hearing, but which was never referenced in later rulings.
¶ 5. The chancellor may have assumed that the balance on the second mortgage was close to the $22,000 that Mr. Miller's lawyer said had been borrowed two years earlier. Without an appraisal, the chancellor guessed that the value of the home was somewhere between the $100,000 and the $79,000 suggested by the parties.
¶ 6. The chancellor stated that she was awarding lump sum alimony as an "equalizer" between the parties. Since Mrs. Miller had tried to reconcile with her husband on several occasions, and it was Mr. Miller's adultery that was the cause of the divorce, it would be "unfair to leave her in... an unequal position." There were not any findings in the record to support the alimony award. On November 18, 2003, we entered an order to have the chancellor make the findings required to support such an award, which were identified in Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). The chancellor complied by making these findings on January 5, 2004:
As to the first factor in Cheatham, the parties do not have substantial wealth. Although Mrs. Miller employed her husband in a second job during their marriage, he did not use this money to accumulate any wealth. Mr. Miller used the money as he deemed appropriate.
As to the second factor, the parties were married over twenty years. In our society, that is considered a lengthy marriage. During the marriage, Mr. Miller was primarily responsible for the support of the family.
As to the third factor, Mrs. Miller does not have a separate estate of significant value.
The fourth factor set forth in Cheatham, concerns whether the receiving spouse would lack financial security if she did not receive lump sum alimony. Mrs. Miller expressed her desire to remain in the marital home. Mr. Miller stipulated that Mrs. Miller was entitled to the use, possession, and ownership of the marital residence. Mrs. Miller's income is such that she would lack financial security if she were obligated to pay the first and second mortgages on the marital residence.
The record also reflects that Mr. Miller's monthly gross income is approximately $2,200.00. This amount is almost twice the amount Mrs. Miller receives as income on a monthly basis.
Mr. Miller was found at fault in the dissolution of the marriage. The Mississippi Supreme Court recognized in Hammonds v. Hammonds, 597 So.2d 653 (Miss.1992), that fault was a factor to be considered in an award of alimony.
Based on the above findings this Court awarded Debra Miller lump sum alimony payable as the second mortgage on the marital residence in order that she could remain in her residence.
*472 ¶ 7. We have had the benefit of supplemental briefs from the parties on these findings.

DISCUSSION
¶ 8. We examine the chancellor's findings for consistency with the Supreme Court's identification of four factors that are to be considered in making an award of lump sum alimony. Separately or jointly these factors do not provide much assistance unless the fundamental consideration is kept in focus, which is whether after equitable distribution an "equalizer" is needed.
¶ 9. Lump sum alimony is a hybrid divorce concept, providing support as does other alimony but also making an unalterable distribution of property as does equitable distribution. These are the factors:
(1) Substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business.
(2) A long marriage.
(3) Where the recipient spouse has no separate income or the separate estate is meager by comparison.
(4) Without a lump sum award the receiving spouse would lack any financial security.
Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988).
¶ 10. Both in these supplemental findings and in her original bench ruling, the chancellor improperly injected the issue of fault for the divorce. True, fault is a consideration in awarding periodic alimony. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). Perhaps the rationale is that a greater amount in support of the recipient spouse and more penalty to the paying spouse is appropriate when fault for the marital breakup is laid at the feet of the payor. Fault has not been identified as a factor in lump sum alimony, nor should it be. When lump sum alimony is paid as an "equalizer," it is because the property distribution has left one spouse's assets out of balance to the other in such a way as to be inequitable. See N. SHELTON HAND, JR., MISSISSIPPI DIVORCE, ALIMONY & CHILD CUSTODY § 11-1 (2002), at 340 ("lump sum alimony may be ordered as a substitute for the allocation of property, per se, where the court finds either that there is no property or that the division of the property is difficult to achieve" in an equitable manner.) Fault is not a factor under Cheatham, and neither is it one of the factors identified for equitable distribution. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). Fault should not be weighed when lump sum alimony is awarded for purposes of balancing property distribution.
¶ 11. Besides relying on fault, the chancellor also erred in giving weight to the fact that Mrs. Miller had little separate estate absent lump sum alimony. She has the marital home, which is the only significant asset of the marriage. Since Mr. Miller has received no property distribution, it was error to require him to equalize the distribution through lump sum alimony.
¶ 12. The evidence also does not support the chancellor's finding that Mr. Miller's monthly gross income is "almost twice the amount Mrs. Miller receives." Already mentioned has been the poorly presented financial information. What there was, though, was disputed. Mr. Miller's financial statement, quickly-prepared during a recess of the hearing, claimed his gross monthly income in 2001 was about $2,000. The income tax form indicating his income for 2000 showed that he made a gross amount of $31,000, or $2,600 per month. Mrs. Miller did not present any tax information, but claimed that she was *473 then earning $10.50 per hour, or about $1,800 monthly before taxes. Her financial statement alleged that she was making $1,500 per month, and a net of $1,230 after taxes. An unresolved dispute existed on whether Mr. Miller was earning unreported money by doing occasional house painting.
¶ 13. We have previously held that lump sum alimony could be paid on a monthly basis for an extended period of time and not lose its classification. Murray v. Murray, 98-CA-00471-COA (Miss. Ct.App. May 4, 1999), aff'd in part, rev'd in part, 754 So.2d 1200 (Miss.2000) (Supreme Court only considered issue of what part of the decree was subject to statutory damages and did not question our ruling on the classifying of this alimony). The excerpts from that opinion quoted below, including the effect of classifying payments, are relevant for our purposes. It was written by Judge Billy Bridges for the Court, on a panel with Judges Tom Coleman and Tyree Irving. Much of it is discussed in HAND, MISSISSIPPI DIVORCE § 11-1, at 341-42.
The chancellor is afforded wide discretion in alimony cases, and this discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). The supreme court has held that periodic alimony is subject to modification and ceases upon the wife's remarriage or upon the husband's death. McDonald v. McDonald, 683 So.2d 929, 931 (Miss.1996). Lump sum alimony, however, constitutes a fixed liability which is not subject to modification. Id.

The rule of law providing for the modification of periodic alimony awards arises from the nature of alimony itself, which is based upon the inherently changing financial ability of the husband to support his wife in a manner to which she is accustomed. As a result, the Chancellors of this state have the authority to modify periodic alimony awards upon a finding of a substantial change in circumstances, regardless of any intent expressed by the parties.
In the case of lump sum alimony, however, said alimony is not considered to be in the nature of continuing support, but rather a property transfer which is vested in the recipient spouse at the time said alimony is awarded. As such, considerations of the payor spouse's financial circumstances are irrelevant, given that an order for lump sum alimony provides the recipient spouse with a vested right to receive said payments. The fact that payments of lump sum alimony are often paid in installments may give said payments a superficial similarity to payments of periodic alimony, but said fact does not change the vested, non-modifiable nature thereof.
Id. (citations omitted).
In this case, the provision at issue reads as follows:
The Husband agrees to pay to the Wife as a form of lump sum alimony the sum of Two Thousand Dollars ($2,000.00) per month for a period of fifteen (15) years, beginning March 1, 1994, and continuing on or about the first date of each and every month thereafter for a total of 180 months; provided further, however, that if the Wife should remarry at any time during said fifteen (15) year period of time, the Husband will then be allowed to reduce the lump sum installment payments by One Thousand Dollars ($1,000.00) per month over and during the balance of the remaining *474 years. It is further understood and agreed by and between the parties that said payments cannot be increased and/or extended by the Wife under any circumstances, and if the Wife should die at any time within the next fifteen (15) years, said payments shall cease and terminate and shall not be payable to her estate. It is further understood and agreed by and between the parties that said payments shall be treated as income to the Wife and shall, therefore, be deductible to the Husband for income tax purposes.
Dr. Murray argues that, although the language in the provision clearly states lump sum, this is really rehabilitative alimony. Rehabilitative alimony has been defined as modifiable, for a fixed period of time, and vesting as it accrues. Hubbard v. Hubbard, 656 So.2d 124, 129 (Miss.1995). The court in Hubbard also stated that "While both rehabilitative periodic alimony and lump sum alimony which is not paid all at once can share the same characteristics of being a certain amount of money paid over a definite period of time, they are distinguishable in their modifiability, respective purposes, and by the intent for which the chancellor grants them." Id.

The chancellor determined that this provision is lump sum alimony and quoted, "[a] fixed and certain sum of money which is due and payable over a definite period of time is clearly alimony in gross, or lump sum alimony, and not periodic alimony." Hubbard v. Hubbard, 656 So.2d 124, 130 (Miss.1995); Holleman v. Holleman, 527 So.2d 90, 92 (Miss.1988); Wray v. Wray, 394 So.2d 1341, 1345 (Miss.1981). The chancellor found that the express language of the judgment provided for lump sum alimony, not periodic alimony. The chancellor further found that the alimony award followed negotiations by Dr. Murray and Sara and was incorporated into the final divorce decree specifically as lump sum alimony and therefore not modifiable. It is this Court's opinion that although there may be certain characteristics of rehabilitative alimony in this provision, the clear language of this judgement provides that the alimony is intended by the parties to be lump sum alimony, not periodic alimony or rehabilitative alimony.
In McDonald, the supreme court stated, "When possible, it would be advisable for parties and judges to pattern their alimony agreements and decrees for non-modifiable lump sum alimony according to established precedent of this Court." McDonald, 683 So.2d at 932." Simple draftsmanship on the part of attorneys in their preparation of divorce decrees can clearly differentiate between the two types of awards, and thereby obviate the necessity of courts having to pass upon this question." Wray, 394 So.2d at 1345.
Accordingly, the chancellor is affirmed in his finding that the payments set at $2,000 per month for a fifteen year period constituted lump sum alimony and cannot be modified.
Murray, 98-CA-00471-COA (¶ ¶ 8-12) (Miss.Ct.App. May 4, 1999).
¶ 14. We have already concluded that the fact-finding did not support the lump sum alimony award. We now turn to whether there at least was some evidence to support the decision, even if not reflected in the findings. Chancellors too often are forced by the parties' evidence to make decisions on unreliable information. This was such a case. We do not know what either spouse was making, as the evidence was insubstantial. We do not know the pay-off amount of the mortgages. *475 We do not know the appraised value of the home. The information about the home allegedly was being prepared for sending to the parties within days of the hearing, but it has never been mentioned in any rulings. A decision still had to be made.
¶ 15. Even so, operating with the evidence available, there was error. Lump sum alimony was ostensibly used here to equalize equitable distribution, but the distribution was already in favor of the recipient spouse. It is not modifiable, which is part of the danger of it. No equalizer was appropriate in this case from the former husband to his former wife.
¶ 16. Though lump sum alimony was inappropriate on these facts, Mrs. Miller had requested alimony in her complaint for divorce. The financial needs of the wife, the fault of the husband, and the somewhat disparate incomes might justify periodic alimony. We reverse and remand for consideration of periodic alimony. An added advantage of a remand is that there will be an opportunity to rectify the omissions in the evidence.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED EXCEPT AS TO THE AWARD OF LUMP SUM ALIMONY; THIS AWARD OF ALIMONY IS REVERSED AND THE CAUSE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. EACH PARTY IS ASSESSED ONE-HALF OF THE COSTS OF THE APPEAL.
KING, C.J., LEE, IRVING, MYERS AND GRIFFIS, JJ., CONCUR. BRIDGES, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY THOMAS AND CHANDLER, JJ.
BRIDGES, P.J., dissenting.
¶ 18. On the issue of whether there was sufficient evidence to support an award of lump sum alimony I concur with the majority in its holding that lump sum alimony was inappropriate. However, I respectfully dissent from the majority in its belief this matter should, yet again, be remanded to the lower court for a third consideration by the chancellor. Rather, I believe equity and evidence in the record supports rendering this matter settled. The record does not support an award of alimony for Debra and the time of the trial court should not be wasted re-reconsidering the assets of the Millers.
¶ 19. The majority in its opinion highlights incompleteness in the record regarding the financial positing and earning capacity of the parties as its reason for remand. It is true the specifics of the Millers's income, mortgage and home appraisal were not known precisely. However, the estimates given by both parties were sufficient for me to understand this is no extraordinary case of dividing wealth and that these people have barely enough assets to divide between them much less consider an additional award of alimony.
¶ 20. In determining whether to make an award of periodic alimony, the following factors must be considered: (1) the health of the husband and his earning capacity; (2) the health of the wife and her earning capacity; (3) the entire sources of income and expenses of both parties; (4) the reasonable needs of the wife; (5) the reasonable needs of the child; (6) the necessary living expenses of the husband; (7) the estimated amount of income taxes the respective parties must pay on their incomes; (8) the fact that the wife has the free use of the home, furnishings and automobile; (9) the length of the marriage; (10) the presence or absence of minor children in the home; (11) the standard of *476 living of the parties, both during the marriage and at the time of the support determination; (12) fault or misconduct; (13) wasteful dissipation of assets; (14) the obligations and assets of each party; (15) the age of the parties; (16) the tax consequences of the spousal support order; and (17) such other facts and circumstances bearing on the subject that might be shown by the evidence. Hemsley v. Hemsley, 639 So.2d 909, 912 (Miss.1994); Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993); Hammonds v. Hammonds, 597 So.2d 653, 655 (Miss.1992); Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 153 (1955).
¶ 21. As stated by the majority, the chancellor's decision to award lump sum alimony is based on the fault of Lee and the chancellor's desire to remedy inequities between the parties financially. It is my belief that the financial positions of the parties will not merit periodic alimony payments upon review by the chancellor. The equity in the home, approximately $22,000, was given to Debra and everything else of value was divided equally. The only other asset of real value in the marital estate was a piece of property they divided equally valued at approximately $12,000. Neither Lee nor Debra earned an above average yearly salary, earning $31,600 and $21,600 respectively. It is my opinion that awarding Debra the additional $22,000, representing equity in the home, more than made up for the financial inequality the chancellor was attempting to repair.
¶ 22. The majority did not consider the second issue before this court:
WHETHER THE COURT ERRED IN SHIFTING THE BURDEN OF PERSUASION FROM THE PLAINTIFF TO THE DEFENDANT.
¶ 23. Lee claims, "Debra had the burden of persuasion which obligated her to produce evidence justifying her demand for alimony." Lee also argues, "[e]ven though Debra filed the complaint and had the burden of persuasion, the court shifted the burden of persuasion to Lee, the defendant."
¶ 24. The authority cited by Lee in this case, Ackerman v. Choctaw County, 157 Miss. 594, 128 So. 757, 758 (1930), has no application or relation to the domestic relations matter before this Court. "When the plaintiff has made out a prima facie case, the burden is shifted to the defendant to proceed with proof on his part (1) to refute the proof that the plaintiff has presented, and (2) to introduce on his part in chief the testimony on those issues, if any, as to which the defendant himself has the burden of proof, for example, a counterclaim." Bridges & Shelson, Griffith Mississippi Chancery Practice § 576 (2000 Ed.). Although in this case Lee filed no answer or counterclaim, it appears that the chancellor was giving Lee an opportunity to refute the proof presented by Debra. Such action by the chancellor was not a shifting of the burden.
¶ 25. In the present case, the information presented by the parties was simply of the "he said, she said" variety. Lee failed to appear for the hearing on October 1, 2001, nor did he file an answer. Lee did not present any evidence and only chose to defend the testimony and/or evidence presented by Debra. Lee cannot ignore the testimony and evidence produced by Debra. Rather, he must produce something in rebuttal to the proof presented by Debra so that the chancellor can understand the issues and how they affect both parties.
¶ 26. The chancellor concluded in her opinion "it's my obligation to try to resolve all the issues fairly and equitably with the evidence that I have before me, and that's what I did." We do not find in the record *477 any action where the chancellor shifted the burden of proof.
¶ 27. THOMAS AND CHANDLER, JJ., JOIN THIS SEPARATE WRITTEN OPINION.