830 So.2d 1261 (2002)
Mary Helen SAUCIER, Appellant,
v.
Richard Michael SAUCIER, Appellee.
No. 2001-CA-00520-COA.
Court of Appeals of Mississippi.
August 6, 2002.
Rehearing Denied November 19, 2002.
*1262 Gary L. Roberts, Gautier, attorney for appellant.
David Elias Kihyet, Pascagoula, Henry P. Pate, III, Vancleave, attorneys for appellee.
Before KING, P.J., LEE, and IRVING, JJ.
LEE, J., for the court.

FACTS AND PROCEDURAL HISTORY
¶ 1. Richard Michael Saucier ("Mike") and Mary Helen Saucier ("Mary") were married in 1977, and in April 2000, a Jackson County Chancery Court granted the Sauciers an irreconcilable differences divorce. The couple's only child, Mary Katherine ("Katherine") was born in 1979. Pursuant to the judgment of divorce, the parties shared joint legal and joint physical custody of Katherine, who has Downs Syndrome, with Mary having paramount physical custody during weekdays and Mike having physical custody on weekends. Mike was ordered to pay $400 per month in child support and ordered to maintain health insurance for Katherine with each party sharing expenses not covered by the insurance. Mike was awarded the marital home with Mary receiving a share of the equity interest. Chancellor Myers did not award alimony since he found Mary's and Mike's incomes were substantially the same.[1]
¶ 2. In May 2000, Mary filed a motion for reconsideration, new trial, alteration or amendment of judgment, asserting that after the trial but before Chancellor Myers's judgment was entered, she became totally and permanently disabled and was not expected *1263 to be able to work in the future. Mary asked Chancellor Bradley to re-open the record to take additional evidence or grant a new trial. After a hearing, Chancellor Bradley denied the motion.
¶ 3. On appeal, Mary argues that Chancellor Myers abused his discretion in failing to award alimony, and erred in failing to award her a more substantial equitable interest in the marital home. We review these issues and reverse and remand.

DISCUSSION OF THE ISSUES
I. DID THE CHANCELLOR ERR IN FAILING TO AWARD ALIMONY?
¶ 4. With her first issue, Mary argues she was entitled to an award of periodic alimony. We look to our standard of reviewing the chancellor's decision whether or not to make such award.
The standard of review employed by this Court in domestic relation cases is abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard.
East v. East, 775 So.2d 741 (¶ 4) (Miss. Ct.App.2000).
Further, "[i]n the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen oppressive, unjust or grossly inadequate so as to evidence an abuse of discretion." However, this Court will not hesitate to reverse if we determine that the chancery court's findings were manifestly wrong or an erroneous legal standard was applied.
Box v. Box, 622 So.2d 284, 287 (Miss.1993). As explained herein, we find that the chancellor erred in declining to award alimony.
¶ 5. Mary cites the factors from Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993), and claims that the chancellor failed to consider each factor, which resulted in the erroneous decision not to award alimony. Those factors delineated in Armstrong which must be reviewed when determining whether or not to award alimony are set forth below:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Armstrong, 618 So.2d at 1280.
¶ 6. With her appeal, Mary specifically claims the chancellor overlooked the first two Armstrong factors. Concerning income and expenses of the parties, Mary argues that the chancellor erred in comparing her net income with Mike's net income, using figures each party provided on their financial statements. As shown on her financial statement, Mary arrived at her net monthly income by subtracting *1264 from her gross income those mandatory deductions for state and federal income tax, social security, and her mandatory retirement through her employer. Mike used the same calculation process, but he also subtracted his credit union deduction, deferred compensation deduction, and the deduction for insurance, all three of these being voluntary deductions. The chancellor used these figures and found that the net incomes were "virtually comparable," thus negating the need for alimony. Mary now claims on appeal that the chancellor's failure to compare "apples to apples" resulted in Mike's income being found to be substantially less than it actually was, which in turn led to the faulty conclusion that the incomes were comparable.
¶ 7. Looking to the figures at issue on Mike's financial statement, Mike explained that the credit union account was used to save money to pay taxes and insurance on the marital home when they came due. Mike told the chancellor, although not mandatory, he had participated in the deferred compensation plan since he started work at the hospital in 1975. Mary also participated in the plan; however, she did not include this in her "other" line item of monthly deductions. Mike explained that the remaining monthly insurance deduction was for life insurance. Looking to the statements, we find that if these voluntary deductions are not included, the disparity between net incomes is actually $1,100, which is substantially greater than the $200 disparity the chancellor found. We agree with Mary that the chancellor erred in failing to compare "apples to apples," as Mike's deductions were voluntary and should not have been included in calculating his net income for the purposes of determining whether to award alimony. For this reason and other reasons further addressed herein, we reverse and remand to award alimony consistent with this opinion.
¶ 8. We also review Mary's claim that on reconsideration, Chancellor Bradley did not consider the fact that Mary's health is substantially worse than Mike's, particularly since following the trial but prior to Chancellor Myers's judgment was entered, Mary became totally disabled which rendered her unable to work. In her motion for reconsideration, Mary asked Chancellor Bradley to allow more evidence to be presented or to grant a new trial since her total disability would limit her future income to short-term disability payments.
¶ 9. While we recognize that a chancellor is to consider the evidence presented at the time of trial and he generally cannot consider evidence other than that presented to him at trial, we also recognize that equity requires the chancellor to do justice. Here, just because Mary's disability did not fall into the time line which may have been preferable, we are not now forbidden from reviewing the circumstances as they were after the trial but prior to the judgment of divorce when equity requires that we do so. Six months passed from the trial to entry of the judgment, which is a lengthy time during which it was entirely possible that, given her fragile health, Mary's condition could worsen, as it did. The fact is, considering the Armstrong factors at the time of the judgment, Mary was unable to earn an income and certainly was due an award of alimony. Accordingly, we reverse and remand for reconsideration of such award.
II. DID THE CHANCELLOR ERR IN FAILING TO AWARD MARY AN EQUITABLE INTEREST IN THE MARITAL HOME?
¶ 10. With this issue, Mary contests the chancellor's decision to only award her $13,697 as an equitable interest in the marital home. As described in his opinion, the chancellor arrived at this figure by *1265 subtracting from the appraised value of the home one-half of the couple's equity, less payments Mike made toward the principal after the date of the couple's agreed order, which was February 1999. Mary argues that the chancellor's use of the $200,000 appraisal value of the home did not take into account that approximately $50,000 worth of repairs were needed after a hurricane damaged the Gulf-front home in September 1998. Mary also claims that the chancellor failed to recognize that Mary had signed over the $50,000 of insurance checks to Mike after she moved out of the home, and Mike should have to account for money he spent from these designated funds.
¶ 11. The only appraisal on the home was conducted in April 1999. At the trial in October 1999, Mary notified the chancellor that in order to make an appropriate valuation, a second appraisal needed to be conducted at the time of trial since repairs were more complete, but the chancellor declined to order such appraisal. Mary testified at trial that she did not want the marital home, and this issue does not concern equitable distribution, per se. Rather, Mary argues that the chancellor made the wrong decision in failing to order a second appraisal as would provide a means for him to make a fair award of equity to her.
¶ 12. We look to the transcript to see what information the chancellor had before him at the trial concerning this issue. Mike was questioned concerning the damage to the home, concerning repairs that had already been done and repairs that were yet to be completed, and concerning the $8,000 that was left in the bank account which held the original $50,000 in insurance proceeds. Mike explained that he had used some of the money for repairs and that he had made many repairs himself with his own money, saving receipts for all of his work. When crossexamined concerning his objection to a second appraisal, Mike explained that since he had done many repairs himself he was afraid a second appraisal would not be accurate. In addition, he maintained that since he and Mary both had agreed on the appraiser earlier that year, he did not see why the original appraisal would not be sufficient. Looking to the copy of the one appraisal that was done, appraiser Mike Heidelberg noted that "considerable repairs are required due to considerable damage incurred during Hurricane Georges in September of 1998," and he also marked the box stating that the appraisal was made "as is." In our review of the evidence presented, we find a question still remains concerning Mike's use of approximately $42,000 of the $50,000 of insurance money, concerning the actual value of the home with regard to status of repairs, and how these would affect any calculation concerning an equity award to Mary. We conclude that the chancellor did not have sufficient information before him as would justify his decision not to require a second appraisal. Therefore, we reverse and remand on this issue to require another appraisal of the value of the home as to enable a fair award to Mary of her equity in the home in light of the questionable use of the insurance money and the questionable status of repairs on the home.
¶ 13. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS REVERSED AND REMANDED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, CHANDLER AND BRANTLEY, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.
NOTES
[1] Chancellor William H. Myers presided over the trial and rendered the judgment of divorce. Thereafter, he was appointed to the Mississippi Court of Appeals, and Chancellor Jaye Bradley presided over the hearing concerning the motion for reconsideration, reviewing the evidence that was presented both at trial as well as at the hearing.