724 So.2d 1086 (1998)
Janice BRIDGES, Appellant,
v.
Walter Kenneth McCRACKEN, Sr., Appellee.
No. 97-CA-00987 COA.
Court of Appeals of Mississippi.
December 18, 1998.
Lawrence Primeaux, Meridian, Attorney for Appellant.
Leonard B. Cobb, Meridian, Attorney for Appellee.
BEFORE THOMAS, P.J., DIAZ, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Janice Bridges appeals from a judgment modifying her ex-husband's alimony and child support obligations. She argues that the court erred both in the amount of rehabilitative periodic alimony granted and the court's refusal to reduce her obligations for child support. We disagree and affirm.

FACTS
¶ 2. Janice Bridges and Kenneth McCracken were divorced on June 30, 1995. The parties entered a property settlement agreement that required Mr. McCracken to pay $375 in support for each of their two children. For the period that Ms. Bridges continued to be employed in the company that they owned, Meridian Data Services, Inc., Mr. McCracken was to pay one dollar per year in rehabilitative periodic alimony. Those payments would end December 31, 2001. This implied the parties recognition that if Ms. Bridges stopped working at the company before that date, the nominal alimony would no longer be adequate. In 1997, *1087 Mr. McCracken bought out Ms. Bridges' half-interest in the company and her employment was terminated soon thereafter. The chancellor entered an order at that time modifying the prior judgment, and acknowledging that Ms. Bridges could petition for modification to the alimony. This appeal involves no issues regarding the fairness or validity of the buy-out.
¶ 3. Ms. Bridges received an initial lump sum payment and then monthly amounts as part of the sale of her stock. Though this money was substantial, she argues that she suffered a marked drop in income after selling her stock. She maintains that the money from the sale of her interest should not be used for expenses and had been earmarked for her retirement. The chancellor agreed that the money that she received for her interest in the company should not be depleted on current expenses. Considerable testimony was given as to the income, assets, and obligations of both parties. Ms. Bridges demands the equivalent in alimony that she was making as an employee of the formerly family-based business, which was $37,500 per year in salary and $29,000 in expenses.
¶ 4. Importantly, the financial information from each party indicated that their divorce had contributed to each having more expenses than income, though Mr. McCracken's income has continued to be substantial, and Ms. Bridges is presently unemployed.
¶ 5. The chancellor concluded that Mr. McCracken should pay Ms. Bridges $750 per month in rehabilitative periodic alimony until the end of 2001. Ms. Bridges argues that is well below the amount warranted. Her request that Mr. McCracken assume complete responsibility for the two children's education and automobile expenses was rejected. The court further awarded a judgment against Ms. Bridges in the amount of $6,329.67 plus 8% interest for such expenses as premiums on a life insurance policy, car insurance, a car note, and other obligations. Mr. McCracken's request that his child support be paid directly to the children was granted in regards to his daughter Lisa but not as to Kenneth, Jr.
¶ 6. Mr. McCracken's motion to have Ms. Bridges held in contempt of court for not paying her portion of the joint expenses was denied.

DISCUSSION

Issue One: Whether the Amount of Alimony Awarded was Inadequate
¶ 7. The supreme court has recognized three types of alimony: periodic, rehabilitative periodic, and lump sum. Hubbard v. Hubbard, 656 So.2d 124, 129-30 (Miss. 1995). What was awarded here was rehabilitative periodic alimony. It is subject to modification, terminates upon remarriage of the recipient or the death of either former spouse, and has a time limit set by the court. It is awarded to assist the recipient "to become self-supporting without becoming destitute in the interim." Id. Rehabilitative alimony is not intended to equalize income between former spouses; instead it gives the chancellor another tool for achieving equity. Id. at 130. Ms. Bridges argues that she should receive an amount of rehabilitative periodic alimony sufficient to bring her back to the income level she enjoyed before being terminated from her employment.
¶ 8. A chancellor's decision regarding alimony will remain undisturbed on appeal "unless the chancellor was manifestly in error in his finding of fact and abused his discretion.... In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). The supreme court has listed a number of factors relevant in a chancellor determining the amount of alimony awarded.
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require *1088 that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 9. The chancellor's analysis of the facts in this case were both thoughtful and detailed. The court found that Ms. Bridges's current income level was exceeded by her expenses by $1,100 per month. However, this does not justify her position that she be restored to her previous income level. He also found that Mr. McCracken's expenses exceeded his income by $2,410. Both are having to draw into savings and other assets.
¶ 10. Mr. McCracken's decision to terminate Ms. Bridges caused her to have substantially less income. However, Ms. Bridges does not contest that the two former spouses were not able to work effectively together in this small business. Indeed, the original settlement agreement anticipated that her continuation in the business might not be practical. The chancellor determined that it was not financially feasible for Mr. McCracken to provide the level of alimony that she was seeking. Instead he set alimony at $750 per month. Both former spouses were struggling to maintain a reduced standard of living. Moreover, Ms. Bridges was not working but was seeking work.
¶ 11. The chancellor, looking carefully at all the evidence, made a reasonable allocation of the mutual difficulties. We affirm his conclusions.

Issue Two: Whether the Chancellor was Manifestly in Error in Failing to Reduce Ms. Bridges's Child Support Obligations.
¶ 12. In meeting obligations towards expenses of her children imposed by the 1995 decree, Ms. Bridges alleges that she had to draw on a considerable portion of her assets. The chancellor agreed that she "should not be required to exhaust the benefits of almost twenty-years of effort in a few brief years" and tried to minimize that. In a divorce it is often if not usually impossible to maintain former standards of living, avoid reduction of assets that were intended for retirement and other purposes, and otherwise to make the former common pool of income spread to cover the separate households that are being maintained. The chancellor was entitled to conclude that Ms. Bridges's assets and not merely her income had to be considered in determining how much child support or alimony that she should receive. Rudder v. Rudder, 467 So.2d 675, 678 (Miss.1985). Both children are in their late teens, and the two spouses support obligations are of not long continuing duration.
¶ 13. With net assets of over $190,000, Ms. Bridges was in a position to maintain her support obligation. We find no error.
¶ 14. THE JUDGMENT OF THE LAUDERDALE COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, AND KING, JJ., CONCUR.
PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
PAYNE, J., dissenting:
¶ 15. With all due respect to the majority, I must dissent. In this case, Janice is given a monthly sum of $750 periodic rehabilitative alimony. Her home mortgage is $717 per month. Kenneth is the sole owner of the corporation that pays him a handsome annual salary and one hundred percent of the dividends. Of course, Janice once enjoyed these dividends; however, she now has no dividend *1089 income, unlike Kenneth, because her corporate share is necessary for her living expenses. Kenneth owns the entire corporation and continues to enjoy dividends on the entire amount of stock, not just his former fifty percent share. Further, Janice has no salary from the corporation, which was as handsome as Kenneth's before the forced buyout. Yet, he only has to pay half of the children's uncovered expenses plus only $375 per month to Janice in support of their son who attends college.
¶ 16. The chancellor's rationale for not giving more alimony to Janice, who, I reiterate, has no salary or dividend payment and is a student, is that all parents have to utilize assets to educate their children. While this may be true, the assets drawn on by Janice represent what was her interest in the corporation. These funds cannot earn dividends unless reinvested. Given the fact that Janice is utilizing these funds to survive, the reinvestment option is closed. Kenneth continues to draw a salary and enjoys substantial stock dividends. Next, the chancellor notes that the improvements in Janice's new residence increase the value of her assets and that she will secure employment somewhere in the future to make up for the loss of monthly income by the year 2001, when the alimony ends. Clearly, it takes neither a lawyer nor an accountant to realize that there is something not right about this picture. The outcome reached by the chancellor by no means comports with the supreme court's statement in Hubbard about rehabilitative alimony's purpose as being an amount allowing the less able party, which without a doubt is Janice, to start over without being rendered destitute during the process of reestablishing her life.
¶ 17. I believe the chancellor was manifestly right in citing Hubbard, and manifestly wrong in entering an order that achieved the direct opposite result. Further, the chancellor added insult to injury by finding a judgment against Janice for past expenses that could have been readily paid if she had remained a salaried employee in the corporation, but which now can be satisfied only by liquidating her asset from the sale of the corporation.
¶ 18. For these reasons, I dissent.