975 So.2d 261 (2007)
Angela Ruth (Hancock) WILSON, Appellant
v.
William Franklin WILSON, Appellee.
No. 2005-CA-02096-COA.
Court of Appeals of Mississippi.
October 9, 2007.
Rehearing Denied February 19, 2008.
*263 Mary Lynn Williams Damare', attorney for appellant.
John Stannard Farese, Ashland, attorney for appellee.
Before LEE, P.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. The Chancery Court of Desoto County granted Angela Wilson a divorce from Frank Wilson based on adultery and divided the marital property between the parties. Aggrieved by the property division by the court, Angela appeals. She asserts that the court (1) erred in classifying Frank's corporation, Tri-State Underground, Inc., as nonmarital property, and (2) awarded an insufficient amount of alimony for Angela to continue her lifestyle.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Angela Hancock Wilson and William Franklin "Frank" Wilson married on October 12, 1987. Angela brought two children into the marriage, but she and Frank did not have any children of their own during the marriage. They remained together until April 2004, at which time Frank moved out of the marital home, and Angela discovered he had been seeing another woman. She filed for divorce on the grounds of adultery, and a trial was held in the Chancery Court of Desoto County on May 5, 2005.
¶ 4. Prior to the trial, Angela sought to join Tri-State, Inc. as a party to the suit so that the court could potentially divide its assets. The chancellor denied this motion as well as Angela's motion for a continuance and for an independent accounting of Tri-State. In the motion, she argued that Frank had failed to turn over all the necessary financial information for the corporation and that more time was needed to properly value Tri-State for the purposes of property division.
¶ 5. At trial, Angela presented evidence as to the value of Tri-State. While the chancellor accepted the value of the company as the value represented on a balance sheet introduced by Angela, she argued that it was not an accurate valuation because the supporting documents were lacking. The accountant Angela called to testify to the value of Tri-State stated that in March 2005, there were over four hundred deleted transactions in the accounting file that he examined. He testified that he could not properly value the company from the information he had been given.
¶ 6. Angela rested her case without calling Frank to the stand after the chancellor said she would not be allowed to call him because she had exceeded her time by fourteen minutes. Immediately after Angela rested, Frank rested his case without putting on any witnesses.
¶ 7. During the trial, Frank stipulated to the grounds for divorce as being adultery, so the only remaining issue was the division of the marital property. The chancellor granted a divorce based on uncondoned adultery and made the following property division: (1) the ownership of Tri-State Underground, Inc. to Frank, (2) the leasehold in Hernando County and all its furnishings to Angela, (3) the 2004 Yukon, or like vehicle, to Angela free and clear, and (4) the marital home to be sold and its proceeds and debts divided evenly. Angela also received an alimony award of $4,000 per month to continue until the court ordered otherwise and attorney's fees in the amount of $19,813.72.

STANDARD OF REVIEW
¶ 8. The scope of review in a domestic relations case is limited by the substantial *264 evidence/manifest error rule. Mizell v. Mizell, 708 So.2d 55, 59(¶ 12) (Miss. 1998). We will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Id. at 59(¶ 13). However, we will conduct a de novo review for questions of law. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002).

ISSUES AND ANALYSIS
I. Whether the court erred in classifying and valuing Tri-State Underground, Inc. and, thereby, ordered an inequitable distribution of marital property
¶ 9. Angela's first argument is that the chancellor erred in the divorce decree by finding Tri-State to be the separate property of Frank. She goes on to argue that the valuation of the corporation was improper, and that these errors resulted in an inequitable distribution of marital property in favor of Frank. We will first address the chancellor's classification of Tri-State.
¶ 10. Marital property is "any and all property acquired or accumulated during the marriage." Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). "Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor." Id.
¶ 11. In the final decree of divorce, the chancellor determined that equitable division of the following property was necessary: "ownership of Tri-State Underground, Inc., personal vehicles, residence in Tate County, Mississippi, a leasehold interest in Lot 1 Phase 1 of the Lakes of Cedar Grove situated in Hernando, Mississippi, and household furnishings." He then ordered that Frank "is found to be the sole owner of said corporation free and clear of any claims by the plaintiff."
¶ 12. While Angela argues that the chancellor erred in classifying Tri-State as separate property, we do not find this to be the case. Contrary to Angela's assertions, the chancellor did not find that the corporation was separate property. As seen in the language quoted above, the chancellor properly found that the ownership interest in Tri-State was an asset to be equitably divided. He then refused to divide the ownership of Tri-State and ordered Frank to be its sole owner. His reasoning was that Angela's contributions to the corporation were minimal. Considering the value of the corporation, this award is essentially an award of $10,000 of the marital property, the ownership interest in Tri-State, to Frank.
¶ 13. Ultimately, Frank received all of the ownership interest of Tri-State but not because the chancellor treated it as separate property. Even though the chancellor awards the entirety of an asset to one party, it does not mean he treated it as separate. Collins v. Collins, 722 So.2d 596, 600(¶ 14) (Miss. 1998). In Collins, the wife alleged that the chancellor treated the equity in the marital home as separate by awarding it all to her husband. Id. The supreme court, however, found that the chancellor fashioned an equitable division by considering the home as well as the remaining assets. Id. We find the issue at hand is identical to the issue in Collins. The chancellor properly classified the ownership of Tri-State as marital property.
¶ 14. As far as the valuation of Tri-State, the $10,000 taken from the balance sheet was the only value of the corporation offered by either party. In his opinion, the chancellor noted that the assets and income of the corporation were unclear but found that there was no evidence beyond the balance sheet that reflected its value. *265 We have previously upheld a chancellor's valuation based on less than ideal proof when the valuation had some evidentiary support and it was the responsibility of the parties to produce evidence of value. Dunaway v. Dunaway, 749 So.2d 1112, 1121(¶ 28) (Miss.Ct.App.1999).
¶ 15. Furthermore, the chancellor found that the financial status of Frank's companies had been precarious. The record supports this conclusion as the first company went bankrupt and resulted in a lien on the marital home. Testimony from Angela also revealed that Frank had credit cards in various names of other individuals to support his spending.
¶ 16. Angela briefly argues that the chancellor should have granted her pretrial motion for a continuance to value Tri-State. However, the trial court has broad discretion in deciding whether to grant a continuance, and we will not reverse that decision unless it resulted in manifest injustice. Profilet v. Profilet, 826 So.2d 91, 93(¶ 6) (Miss.2002). Angela had over a year from the date she filed for divorce to value the corporation, and there was a month remaining before trial when she filed her motion.
¶ 17. Having dealt with the classification and the valuation of Tri-State, we now address whether the chancellor properly divided the marital property. Angela's sole complaint with the division of property was that Tri-State was not properly divided. Because we have found, however, that the chancellor properly dealt with the corporation, we do not find his award of Tri-State, valued at $10,000, to be in error.
¶ 18. Angela received the 2004 Yukon, free and clear, the leasehold interest to the Hernando residence, one-half of the value of the marital home, and personal property in her possession, which she valued at $50,000 in her financial statement. Frank received sole ownership of Tri-State, two encumbered vehicles, one-half of the value of the marital home, and any personal property in his possession. Based on these facts, we find the assets of the marriage were equitably divided, and proper application of the Ferguson factors supports this result. Ferguson v. Ferguson, 639 So.2d 921, 928-29 (Miss.1994).
¶ 19. The chancellor properly classified the interest in Tri-State as marital, and he was within his discretion in valuing the company according to the only figures that were in evidence. The division of assets is equitable in light of the Ferguson factors in evidence. Id. This issue is without merit.
II. Whether the court awarded adequate alimony
¶ 20. Angela's second argument is that the award of alimony was inadequate. She argues that she should receive at least the $10,000 per month that Frank paid her in the temporary support order.
¶ 21. A chancellor has discretion in making an award of alimony, and his decision will not be overturned absent an abuse of discretion or manifest error. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). In determining an award of alimony, the trial court considers a number of factors. Id.
¶ 22. In the present case, the chancellor made the following findings under Armstrong:
(1) Angela had no income, while Frank made over $8,000 per month,
(2) Frank's earning capacity far exceeds Angela's, who worked little during the marriage,
(3) Frank's needs should amount to approximately $4,000 per month when temporary support is deducted, and *266 Angela's expense estimate of over $9,000 per month is greatly exaggerated,
(4) Angela should receive most of the personal property of the marriage to offset Frank's receipt of the business and its corresponding assets and liabilities,
(5) The marriage lasted seventeen years,
(6) The parties had no children from the marriage,
(7) Frank is forty-five, and Angela is fifty,
(8) The standard of living for each party has been far beyond his or her means,
(9) There was nothing on tax consequences,
(10) Frank is at fault for the divorce because of his adultery,
(11) Both parties equally overspent assets, and
(12) There were no other factors.
¶ 23. It seems then that the chancellor considered and made findings on each of the factors enumerated in Armstrong. Based upon these findings, he awarded Angela alimony payments of $4,000 per month. While this may have been below the standard of living to which she was accustomed, it was an award of approximately fifty percent of Frank's reported income.
¶ 24. Angela had been receiving temporary support of $10,000 per month until approximately February 2005. After reviewing her expense estimates, the chancellor found them to be greatly exaggerated. Specifically, he found "discrepancies or gross overspending with respect to [Angela's] living expenses in the areas of property taxes and insurance, food and household supplies, electricity, telephone, clothing, entertainment, incidentals, gasoline and oil, charitable donation[s], Christmas gifts, cable TV, yard and maid expenses." He had also previously noted the parties' long history of living beyond their means.
¶ 25. Angela, nevertheless, argues that she should continue to receive at least the $10,000 per month that she was receiving for temporary support. However, it is not always financially feasible for one party to provide the amount of alimony that the other party seeks. Bridges v. McCracken, 724 So.2d 1086, 1088(¶ 10) (Miss.Ct.App. 1998). It may be, as it was in Bridges, that both parties will be subject to a reduced standard of living following a divorce. Id. In the case before us, Angela argues that Frank's temporary payments of $10,000 indicate his ability to pay that much. She neglects, however, to reconcile the fact that, at the time of trial, Frank had failed to pay the full amount of temporary support for a number of months, he had outstanding loans from Tri-State, and she had testified about how Frank would establish credit in others' names.
¶ 26. We do not find the chancellor abused his discretion in his award of alimony to Angela. The chancellor considered each of the Armstrong factors and fashioned an award that took into consideration the needs of Angela as well as the ability of Frank to pay. This issue is without merit.
¶ 27. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.